[Cite as *State v. Guyton*, 2026-Ohio-2188.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

      Plaintiff- Appellee,                    :

                                 No. 115791

      v.                                         :

TA'NAEJAH GUYTON,                            :

      Defendant-Appellant.                   :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 11, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-698033-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anna Faraglia and Andrew Boyko, Assistant Prosecuting Attorneys, *for appellee.*

Edward M. Heindel, *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Ta'Naejah Guyton ("Guyton") appeals from her judgment of conviction and sentence for involuntary manslaughter. She claims that her right to be present at all critical stages of trial was violated when, prior to

sentencing, the trial court viewed a surveillance video provided by the State outside of her presence, but in the presence of Guyton's attorneys and the State. Neither Guyton nor her attorneys objected to her absence.

{¶ 2} After a thorough review of the record and applicable law, we find that Guyton has failed to demonstrate that she was prejudiced by the court viewing the surveillance video without her being present and, therefore, she has failed to demonstrate the trial court committed plain error in doing so. For this reason, we overrule Guyton's sole assignment of error.

## I. Procedural History and Relevant Facts

### A. Indictment and Plea Agreement

{¶ 3} In December 2024, Guyton was charged in a thirteen-count indictment in connection with the murders of Mariana Grier ("Mariana") and Antwon Grier ("Antwon"), and the assaults of Lashawnda Grier ("Lashawnda") and Ant'Juanyce Grier ("Ant'Juanyce"). The indictment charged Guyton, along wither her co-defendants, Noah Pate and Christopher Pate, with multiple counts of aggravated murder, murder, felonious assault, and improperly handling firearms in a motor vehicle, with one- and three-year firearm specifications.

{¶ 4} On August 20, 2025, Guyton entered into a plea agreement with the State, pleading guilty to Count 1, involuntary manslaughter, as amended.[1] As

---

[1] Guyton's codefendants also entered pleas of guilty. Christopher and Noah Pate each pleaded guilty to one count of involuntary manslaughter, a felony of the first degree, with a one-year firearm specification.

consideration for the plea, the State amended Count 1 of the indictment to involuntary manslaughter, in violation of R.C. 2903.04(B), a felony of the third degree. Count 1 was further amended by deleting the firearm specifications. The remaining counts in the indictment, with respect to Guyton, were dismissed.

**B. Sentencing**

{¶ 5} Guyton was sentenced on October 22, 2025.[2] Prior to sentencing, the judge met with the attorneys for the parties in the jury room, outside the presence of Guyton and her codefendants. The court explained that the State intended to show surveillance video capturing what occurred on the date of the offense and that it requested that it be viewed outside of the courtroom because of its sensitive nature. The court noted that "everyone" but the court had already seen the video.

{¶ 6} Prior to viewing the video, the court asked if anyone had any objection to the viewing of the video not occurring in open court. None of Guyton's attorneys, nor any of the attorneys for Guyton's codefendants, objected to the court viewing the video outside of the courtroom. Nor did they object to viewing the video outside the presence of Guyton and her codefendants.

{¶ 7} When the video concluded, the trial court inquired of the parties: "Before we go into the courtroom, does anybody want to say anything?" Again, nobody offered comment or objected to the viewing of surveillance video.

---

[2] The transcript of the proceedings indicates that sentencing occurred on October 21, 2025, notwithstanding the trial court's sentencing entry and the court docket noting that sentencing took place on October 22, 2025.

{¶ 8} The remainder of the sentencing hearing occurred in open court, with Guyton present. The court stated that it "did meet with counsel briefly in chambers before coming on the record, and also had the opportunity to view a video that they asked me to see. Our court reporter was present for that." Again, neither party objected to the video being played outside of the presence of Guyton and her codefendants.

{¶ 9} Prior to imposing a sentence, the court heard from the victims' family members, Guyton, Guyton's counsel, and the prosecutor. The court imposed a sentence of three years in prison for her involuntary-manslaughter conviction.

## C. Appeal

{¶ 10} Guyton filed a notice of appeal from the trial court's sentencing entry. She presents one of error for our review:

> The trial court violated Guyton's right to be present at all critical stages of the proceedings by playing a video of the incident during sentencing outside her presence, without notifying her of [her] right to be present, and obtaining a valid waiver of that right. This denial of her presence contravened Crim.R. 43(A) and deprived her of her due process under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States [Constitution], and Section 10, Article I of the Ohio Constitution.

## II. Law and Analysis

### A. Standard of Review and Applicable Law

{¶ 11}"A defendant has a constitutional right to be present, absent a waiver of this right or other extraordinary circumstances, at every stage of his trial." *Williams* at ¶ 89, citing *Illinois v. Allen,* 397 U.S. 337, 338 (1970). In Ohio, a

defendant's due process right to be present is embodied in Crim.R. 43, which provides that a "defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules." Crim.R. 43(A)(1).

{¶ 12} However, a defendant's "right to be present is not absolute." *State v. White,* 82 Ohio St.3d 16, 26 (1998), citing *State v. Meade,* 80 Ohio St.3d 419, 421 (1997). "A defendant's absence . . . does not necessarily result in prejudicial or constitutional error." *State v. Grate,* 2020-Ohio-5584, ¶ 83. "'The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his [or her] absence, *and to that extent only.*'" (Emphasis in original.) *Id.,* quoting *Snyder v. Massachusetts,* 291 U.S. 97, 107-108 (1934). "Prejudicial error exists only where 'a fair and just hearing is thwarted by [the defendant's] absence.'" *State v. Fields,* 2022-Ohio-620, ¶ 59 (8th Dist.), quoting *Snyder* at 108. "The exclusion of a defendant should be considered in light of the whole record." *Id.,* citing *United States v. Gagnon,* 470 U.S. 522, 526 (1985).

{¶ 13} Prior to reviewing the surveillance video, the trial court asked all attorneys present, including Guyton's attorney, if there was any objection to viewing the surveillance video. Nobody objected to the court viewing the surveillance video. Nor did anyone object to the video being played without Guyton being present. Because Guyton failed to object to the court viewing the surveillance video outside of Guyton's presence, we review for plain error. *State v. Williams,* 2024-Ohio-6026,

¶ 88 (8th Dist.) (holding that a defendant's failure "to object to the trial court's continuation of trial in his absence, we review for plain error").

{¶ 14} Under Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Thus, the party raising plain error must demonstrate "that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." *State v. Buttery,* 2020-Ohio-2998, ¶ 7, citing *State v. Quarterman,* 2014-Ohio-4034, ¶ 16.

### C. Analysis

{¶ 15} The State does not dispute that the surveillance-video footage was viewed by the trial court outside of Guyton's presence. However, the State maintains that Guyton suffered no prejudice as a result. Guyton, on the other hand, contends that "[t]he court relied on what it saw in the video to assess the seriousness of the conduct, the defendant's culpability, and the need for a prison sentence." Assuming that the trial court's viewing the video without Guyton present was error, Guyton has failed to demonstrate that she suffered prejudice as a result.

{¶ 16} Guyton asserts that since she was absent during the playing of the video, "she could not challenge the video's accuracy, context, or prejudicial effect."

However, the record reflects that Guyton's attorneys were present in the jury room when the video was played. The record also indicates that Guyton's attorneys and all others present in the jury room, excluding the trial judge, had previously seen the surveillance video. Guyton does not direct us to any inaccuracies in the video observed by the trial court. And to the extent any inaccuracies or contextual misrepresentations are contained in the surveillance video, Guyton's attorneys had previously seen the video and did not object to the video being played for the court. Nor did any of Guyton's attorneys direct the court to any inaccuracies contained in the video.

{¶ 17} Guyton further argues that by her presence during the viewing of the video, "the [c]ourt might have been swayed to offer community control, which was an available punishment." But this is pure speculation and insufficient to demonstrate prejudice. *State v. Morgan,* 2017-Ohio-7565, ¶ 53; *State v. Atwater,* 2020-Ohio-484, ¶ 13 (8th Dist.) (recognizing that "[s]peculation does not establish prejudice"). Rather, "plain error requires more certain proof of prejudice to the appellant. . . . [It] requires proof that the trial result *clearly* would have been otherwise." (Emphasis in original.) *In re J.S.,* 2017-Ohio-75, ¶ 9 (9th Dist.), citing *State v. Murphy,* 91 Ohio St.3d 516, 559 (Cook, J., concurring).

{¶ 18} Guyton offers no more than speculation that the sentence would have been different had she been present when the surveillance video was played for the court. Nor is there anything in the record that would suggest that the outcome would have been different had Guyton been present when the judge viewed the surveillance

video.  Thus, Guyton has failed to demonstrate that the trial court committed plain error when viewing the surveillance video without her being present.  As a result, her sole assignment of error is overruled.

{¶ 19}  Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
EILEEN A. GALLAGHER, J., CONCUR